# LINDSAY VS. WAYLAND.

It is by no means certain that *sections* 132 *and* 133, (*chap.* 126, *Digest*,) were intended to apply to cases pending in the Circuit Court on appeal from a justice of the peace; and where, in such case, the court, upon consolidating several suits, upon which one action might have been brought, refuses to tax the plaintiff with the costs in all the cases but one, this court will not control the discretion of the Circuit Court in that respect.

It is not the province of this court to disturb the verdict of a jury, if it be not totally unsupported by evidence, although inclined to think the weight of evidence is against the verdict.

The application of a witness to explain his testimony, after he has given it in and retired, is addressed to the discretion of the Circuit Court.

Where the defence, to an action on a note is, that it was given for the purchase money of a slave, and that the slave was unsound at the time of the purchase, there is no objection to proof that the slave was sound at some time prior to the sale, provided the jury clearly understand that his soundness, at the date of the sale, and not at a prior time, is the matter in issue.

*Appeal from the Circuit Court of Lawrence County.*

HON. BEAUFORT H. NEELY, Circuit Judge.

WM. BYERS, for the appellant.

JORDAN, for the appellee.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

On the 28th of March, 1854, Jonathan Wayland, as guardian of Sinclair Manson, commenced nine separate suits against John A. Lindsay, A. J. Hardin and William S. Smith, before a justice of the peace of Lawrence county. The suits were founded upon nine bonds, eight for $100 each, and one for $20, executed by the defendants to the plaintiff, as such guardian, all of them

bearing date on the 12th of July, 1853, and due one day after date. Judgments in favor of the plaintiff, and appeal by the defendants, in each case, to the Circuit Court of Lawrence county.

In the Circuit Court, the defendants moved to consolidate the suits, and that the plaintiff be taxed with the costs of all of them but one. The court ordered the suits to be consolidated, and that the costs in the several cases should abide the event of the suit so consolidated.

The cause was submitted to a jury, the defendants relying upon failure of consideration as a defence; the jury returned a verdict in favor of the plaintiff for the full amount of all the bonds, and judgment was rendered against the defendants accordingly, and for costs. Motion for new trial overruled, bill of exceptions, and appeal by Lindsay to this court.

1. The refusal of the court to tax the plaintiff with the costs of all the suits but one, is assigned for error.

Neither of the bonds being for a greater sum than $100, the plaintiff might have joined them in one suit before the justice of the peace, though the aggregate sum of all of them was greatly over that amount. *Collins vs. Woodruff*, 4 *Eng. Rep.* 463; *State vs. Scoggin*, 5 *Ib.* 327.

But the plaintiff having elected to bring separate actions upon the bonds, there is no provision in the statute, regulating proceedings before justices of the peace, requiring the justice to consolidate them. See *Barnes vs. Holland*, 3 *Mo. Rep.* 47; *Sykes vs. The Planters' House, &c.*, 7 *Ib.* 477.

*Section* 132, *chapter* 126, *Digest*, under the caption of "PRACTICE AT LAW," provides that, "whenever several suits shall be pending in the same court, by the same plaintiff, against the same defendant, for causes of action which may be joined, &c., the court in which the same may be prosecuted, may, in its discretion, order such suits to be consolidated into one action."

*Section* 133, of the same *chapter*, provides that, "when any plaintiff shall bring, in the same court, several suits against the same defendant or defendants, for causes of action that may be joined,

the plaintiff shall recover only the costs of one action: and the costs of the other actions shall be adjudged against him, *unless sufficient reason appear to the court for bringing several actions.*"

It is by no means clear, that these sections were intended to apply to cases pending in the Circuit Court, on appeal from justices of the peace. They could not be applied in all such cases, for the reason, that where defendant appeals, and the plaintiff succeeds in the Circuit Court, he is entitled to judgment against the defendant and his securities in the recognizance, for the debt and costs of both courts (*Digest, chap.* 95, *sec.* 193,) and where there might be different securities in the several recognizances, the court would have no power, upon consolidating the several suits, to render judgment in favor of the plaintiff, against the securities in the recognizance taken in one suit, for the several demands, or for costs of all the suits. Such a judgment would not be warranted by the terms of the recognizance.

In this case, however, the same person was security in all the recognizances, but the court rendered no judgment against him at all.

Whether the court acted under the above provisions of the statute, or in the exercise of its common law power in consolidating the several suits in this case, the motion to consolidate, and the taxing of the costs, were to be determined in the exercise of a sound discretion. *Dewes vs. Eastham*, 5 *Yerg. Rep.* 297; *Thompson vs. Shepherd*, 9 *John. Rep.* 262; *Wilkinson vs. Johnson*, 4 *Hill N. Y.* 47; *Dudning vs. Bank of Auburn*, 19 *Wend.* 23; *William Scott & Co. vs. Brown*, 1 *Nott & McC.* 417; 2 *Ib.* 438; *McRea vs. Boast*, 3 *Randoph* 481.

The suits were consolidated upon the motion of Lindsay, and for his own benefit. The taxing of the costs being a matter resting in the sound discretion of the court, we will not reverse the judgment, in the absence of any showing that there was manifest error or abuse of such discretionary power, &c., as held in *Meadows vs. Rogers*, at the present term.

2. The first ground of the motion for a new trial is, that the verdict was contrary to law and evidence.

It appears, from the bill of exceptions, that on the trial, the plaintiff read in evidence to the jury, the nine bonds sued on, and closed.

The defendants proved that the bonds were given for a negro boy, *Sam*, sold by the plaintiff to the defendant, Lindsay, on the 12th of July, 1853, for $820, with bill of sale, warranting the negro to be sound in body and mind.

A number of witnesses, mostly physicians, were examined, as to the soundness of the negro at the time of the sale, &c., &c.

It seems, from the testimony, that Lindsay had the boy hired in the year 1853; that he ran off from him about the last of May, and was out between three and six weeks, and when he returned, he was much reduced in flesh, and looked feeble and emaciated. In a week or two after he returned from the woods, being in Lindsay's possession and employment, he purchased him of the plaintiff. He was kept employed on Lindsay's plantation during the summer, but not generally put at hard or heavy work, nor required to make a full hand, in consequence of his reduced condition. On the 4th of September, 1853, Lindsay obtained a prescription, from his family physician, Dr. Valentine, for the boy, saying he had a chill. Two or three days after this, the physician was called in to see the boy, and found him sick in bed, with symptoms of typhoid fever, of which disease he died, about twenty-two or three days afterwards.

The point in controversy, before the jury, seems to have been, whether or not the seeds or causes of the disease, of which the negro died, were contracted while he was run off, by exposure, alternate hunger and excessive eating, anxiety of mind, &c., &c., and consequently, existed in him at the time of the sale, &c.

It appears, from an entry of record, that the counsel of the

parties agreed that the law of the case was, that if the boy, Sam, was sound at the time of the sale, no defence could be made against the bonds sued on; but that, if the boy was unsound, the unsoundness was a valid and legal defence to the bonds, to the extent of the unsoundness. That, in consequence of this agreement, the court gave no instructions to the jury.

Thus, the parties having agreed upon the law, there was nothing but a single question of fact to be determined by the jury; whether the negro was sound or unsound at the time of the sale. We are inclined to think that the weight of evidence is against the verdict, but it is not totally unsupported by the evidence, and it is not our province to disturb it.

3. The second ground relied on for a new trial, is as follows:

At some time during the progress of the trial, after the witness, Dr. Valentine, had been examined, cross-examined, and retired from the stand, he came before the court, and asked leave to explain his testimony touching the primary and exciting causes of the disease of which Sam died. But he stated, in reply to a question of the court, that he was, himself, satisfied with his testimony, but that he feared that they did not understand him rightly, and he had been so told by Lindsay: but the court refused to allow the explanation by the witness, and defendant excepted.

There is nothing in this exception at all. The application of the witness to explain his testimony, was addressed to the discretion of the court: the court deemed it unnecessary, and perhaps, improper at the time, and we find nothing in the record to induce the belief that the court erred in the matter.

4. The third cause assigned for a new trial, is stated in the bill of exceptions, thus:

"During the progress of the trial, John Bridges was introduced, as a witness for the plaintiff, to prove the soundness and good health of the boy, Sam, in 1852, which the defendant objected to, but the court overruled the objection, so far as to allow

such evidence to be given, relating to the latter part of the year 1852, to which the defendant excepted."

The sale was 12th July, 1853. The plaintiff had a right to go back to a point of time reasonably remote, to commence showing the health of the negro, and trace it to the day of sale. How far he might go back would depend much upon the circumstances of the case, and would have to be controlled by the discretion of the court. In this case, the jury must have understood very well, from the agreement of the counsel in relation to the law of the case, that the soundness of the negro, at the date of sale, and not at a prior period, was the matter in issue; and if the court erred in permitting evidence of his good health, &c., as far back as the latter part of the year 1852, to be introduced, it was merely irrelevant testimony, and we cannot suppose that the jury were misled by it.

The judgment of the court below is affirmed.

Absent, Mr. Justice SCOTT.